So our last case, or oral case for today's docket, is 525-0045, City of Metropolis-Haddoll v. Burr. We've got Mr. Kruger here on behalf of the city, and we've got Mr. Keller and Mr. Throgmorton here. You're going to be arguing, Mr. Keller? Yes, Your Honor. Okay, they're here for Mr. Burr. You ready to proceed? Yes, Your Honor. Go right ahead. Just make sure when you start to give us your name for the record. May it please the Court. My name is Richard Kruger, and I'm the attorney for the City of Metropolis and for Larry West and Terry West, and they are the Kellers. This case is a case of first impression on the interpretation of a statute, and that is whether foreclosure of a municipal abatement lien is in-rim jurisdiction or in-person jurisdiction. And that decision determines the method of service, whether the publication is sufficient or actual physical service is required. This is also a case where judgment was entered on the pleadings, and the West brothers had filed an affirmative defense with factual issues that they were purchasers of the property for value and latches. The facts in this case are important. The City of Metropolis adopted an ordinance regarding the cleanup and mowing of properties, and that was authorized by the state statute, which is in the Illinois Municipal Code, which provides for abatement of liens. The City of Metropolis on this particular property filed four different liens, and then they foreclosed on those liens, went through the full foreclosure process with a complaint, publication in the Metropolis Planet, our newspaper service was not – summons was issued, but it was not served. Motion for default filed, judgment of – order default, judgment of foreclosure, publication again in the Metropolis Planet. There was a sheriff's sale for that – with that publication. Judge Lambert confirmed the sale, and at the sheriff's sale, the city was the high bidder bidding $2,900 for the property. After that, Larry West and Terry West, the property was again advertised for sale in the Metropolis Planet, and they bid the price of $5,001. The condition of the property at the time that the West purchased, there was severe damage to the property from a fire, and a roof on the garage was missing. The West conducted extensive repairs, put a roof on the residence, a brand-new roof on the garage, remodeled four rooms, constructed a staircase to the second floor, new furnace, air conditioner, appliances. Those repairs cost $48,000, and the total price to the West was $53,000. Mr. Burr then filed a motion to vacate, but he filed it two years and two months after the default order. Originally, Mr. Burr only filed against the city of Metropolis. The city of Metropolis moved to dismiss. That was denied. The West was served seven months later, and they filed an affirmative defense. Among the affirmative defense were latches, and that they were purchasers for value, so that with a purchaser for value under 2-1401, you couldn't file more than two years afterwards. The judge entered judgment on the pleadings. This case, I'm going to argue two issues. One is jurisdiction, whether it's in REM, that's a de novo consideration. Why is it important in this case? If it's in REM, no personal service is necessary. The Illinois statutes involving foreclosure of municipal abatement lanes have never been interpreted. There's zero guidance, I think, from the statutes. In fact, the statute is somewhat inconsistent. The statute, it's 11-2015, provides that a municipality's removal cost is a lien upon the property. And here's the real kicker. Foreclosure is to perceive as in the case of mortgages or mechanics liens. The problem there is that the Illinois Supreme Court has held that mortgages are quasi in REM, but there's many cases, particularly in their site in the brief, that say that a mechanics lien is in REM. So there's not much guidance there. This court in Smith v. Hamill, a 2014 case, said that proceeding to adjudicate a lien is held to be in REM, specifically held to be in REM, and that in that same case it says in REM or quasi in REM, you're not required personal service. The statute on foreclosure of a municipal abatement lane, it doesn't provide for any money judgment against the owner. The municipality recovers solely from the proceeds of the sale. The only remedy is a lien, and the only way to enforce it is through foreclosure. Now, if you read the cases, they pretty clearly differentiate between in REM and quasi in REM, but the situation on the foreclosure of a municipal abatement lane is very different from a mortgage. Mortgages are contractual. They're an agreement between the mortgagor and the mortgagee. The mortgagor under the mortgage foreclosure statute is a necessary party. Here, where the enforcement is for the right in the thing, it's a given piece of property. What causes the lien is grass, grass growing up. It's a natural condition. If you don't mow it, you're going to be in violation of this lien. It's a condition from the property itself. It's not like a mortgage where the action arises from the default of the mortgage, failure to pay or some other violation. Can I ask you a question, counsel? So what effect, if any, when, so like in the original complaint under 2K, it says name of person or entity claiming to be personally liable for deficiency. James E. Burr did in the motion for default, it says in paragraph 2, plaintiff is not seeking a money judgment or any relief necessitating personal service against the defendant. The judgment in 3F says the plaintiff shall be entitled to a judgment in personam for the amount of such deficiency against James E. Burr. And in the order confirming sale, it lists a deficiency that in that one, it doesn't mention any deficiency against Mr. Burr. So to me, there's conflicting language in all of these, not all of them. Some say there's a deficiency in personam, some don't, some don't address it. I mean, how might that impact the issue? Well, Judge, I think it's a very good question. And I think it's governed by the statute. I don't think the parties determine the type of jurisdiction that's to be governed. And I agree with you. There are some things, and that's my mistake, but I think the end is in the motion to default it clearly states that we're not seeking any type of money judgment. The motion to confirm does not have any type of money judgment. And I think there's significant elements of the pleading that show that we're not seeking a money judgment against the defendant. I think that's clear that our only remedy is against the property. Thank you. You're welcome. Our briefs clearly show, I think, the difference between a mortgage and this lien itself. The other issue I would like to deal with involves the West and the judgment on the pleadings, the existence of tribal issues of fact. The West came into this case about seven months after it was filed against the city. I'm talking about the petition to set aside. And this would be de novo as well. If there are factual issues, the judgment on the plea would be improper. The West clearly in this case are purchasers for value. They paid $53,000, and that would mean that you cannot vacate the judgment under 214.01 after two years. Also on Latches, Latches has a – there's prejudice here to the West in payment of the $53,000. But this lack of – another element is the lack of diligence by the party asserting the claim, and that involves what the party knows or should not have known. Here you have the West constructing for about a 12-month period, doing very extensive repairs. Mr. Burr claims that he is out there mowing the yard. He either knew or should have known of this proceeding, and he slept on his rights, basically, is what is involved here. So Latches would apply. The problem is that the West never got the opportunity to litigate that issue because the judgment was on the pleadings, and the trial court held that – they said the affirming defense of Latches is already rejected in the plaintiff's motion to dismiss. Now, the plaintiff's motion to dismiss was argued months earlier, so the West never got a chance to present their evidence on Latches and on the fact that they paid monies. In conclusion, we would ask that this court reverse the trial court and deny Mr. Burr's motion to vacate or, in the alternative, remand the case to get further proceedings directed by this court. Can we look at the issue, and whether it is or is not an issue, of the fact that the city either knew or should have known that Mr. Burr's address was in Indiana rather than sending the notices trying to get him served at that, whatever, 408, whatever the address is in Metropolis. Yes. Does that make any type of difference in any of these arguments? Well, the statute says that it's to be mailed to the – I believe it says the last person to pay taxes to that address, and I think that was done. The – I think if you look at it from a factual standpoint, he says he called the city clerk about something – you know, it's a city. There's several employees. I don't think that, you know, necessarily gives notice to the city, and there's other things that he alleges as well. Because if I remember correctly, he purchased the property from an LLC, I think from California. That's correct. And I think the liens had already been placed on the property prior to him taking possession and getting the deed, if I remember correctly. I believe so. And I think there were some other allegations about city workers talking to him while he was mowing the yard, things such as that. So there are some factual issues regarding that. But it just seems like all the notices, everything was to that 408 address rather than his address in Indiana. First, there was publication in that paper.  And very extensive repairs being done that should have been afforded him. Justice Hackett, do you have any questions? No, thank you. Just to clarify, did I understand you to say that either the statute involved or the ordinance involved did not provide for deficiency judgment, or is that just what you're preparing? No, it did not. It does not provide for deficiency judgment. So that's the difference in this in a mortgage foreclosure? A mortgage, you said, is quasi, in rem, and in personam. In a mortgage foreclosure, you're frequently seeking a deficiency judgment after a statute. You're not seeking it for sale here because you're not seeking a deficiency. That's why you're arguing that this is purely in rem and not quasi or not in personam. Yes, sir. Thank you. Because the statute in the mortgage allows for a deficiency. Yes. All right. Thank you. And I'll tell you, you'll have time for your rebuttal. Excuse me? You'll have time for your rebuttal. Okay. Thank you. Good afternoon, Your Honor. May it please the court, my name is Tim Keller, and I represent the appellee, James Berg. The case before you today involves fundamental issues of due process and statutory interpretation. I am requesting this honorable court affirm the lower court's ruling. Your Honor, everything the city councils did in filing the lien foreclosure, utilizing the procedures of the Illinois Mortgage Foreclosure Law, followed Illinois procedural requirements to the T, except for the failure of service. Because the city was seeking to gain possession of what it mistakenly believed to be abandoned residential property, it was required to proceed under 65 ILCS 511-20-15.1, and it did so. Look at the third line of my esteemed colleague's complaint. It's in C-10. He brought this pursuant to 15.1, not 15. And that issue is determinative of this case, and I'm going to explain why. 15.1 clearly says when you're seeking to obtain abandoned residential property through an abatement lien, it is, quote, enforceable exclusively, end of quote, under, quote, section 1508 for confirmation of sale, and that's in the Illinois Foreclosure Act. And you'll see that at 15.1D, Your Honors. It was the city's incorrect citation to 2015 that they really hammered in their reply, and my esteemed colleague brought up during this argument that caused me to dig into this further last night. So what I'm explaining is not in the briefs. Although I did raise in my brief at page 17, why is he citing to 15 instead of 15.1? I understand why now. The city advances the argument that this is akin to a mechanics lien foreclosure, and the miscite to 15 would support that claim because 2015 provides that a lien under that section, quote, may be enforced by proceedings to foreclose and as in case of mortgages or mechanics liens. And that's at 15.E. But that is not what the city attorney utilized because the city also wanted possession of the abandoned residential property, which is exclusively enforceable as a mortgage foreclosure. My dear friend got it right. But you cannot just jump ahead to the confirmation of sale without using all of the mortgage foreclosure provisions. This includes 735 ILCS 5 slash 15 dash 1107 mode of procedure. And what it provides is, quote, except as otherwise provided in this article, the mode of procedure including the manner of service of pleadings and other papers and service by publication shall be in accordance with the provisions of Article II of the Illinois Code of Civil Procedure. As your honors are well aware of, this is the process section. This is how you serve people. It's part two of Article II of the Illinois Civil Procedure Act. It deals with process and it starts at 5 slash 2 dash 201. And of course, a part of that is 5 slash 2 dash 206, which is what the lower court found was not complied with. And that's why service was invalid. The requirement of personal service in a mortgage foreclosure action is uncontested. It comports with the Supreme Court's holding that both parties cite to in ABN Amaro Mortgage Group v. McGann. That's cited in a brief. It's an Illinois Supreme Court case from 2010. It held, quote, and this is in our brief, in quasi-in-rim actions, a named party is the defendant. The city admits this in its brief at page 20, stating, quote, foreclosure proceedings is quasi-in-rim, requiring service on the mortgager, and then it cites to ABN. Further quoting from ABN, because Mr. Burr, quote, is a necessary party in a foreclosure action, it is necessarily true that there must be personal service on him. That's at page 536. So the city attorney attempted to personally serve Mr. Burr, because that is what is required under the Illinois Mortgage Foreclosure Law. There was just a failure of service under 5-2-206, service by publication, which the lower court correctly determined. Therefore, the appellant's attempt to pigeonhole its complaint of foreclosure under 2015 must be rejected by this court. Now, the city spent a lot of time in the lower court, as well as its brief here, in addressing PEOPLE XREL Alvarez versus $59,914 United States currency. It refers to this shorthanded as Alvarez, because it doesn't want this court to focus on, I think, that this is actually under the Drug Forfeiture Act, and it's against the money. That's different. That's not what we have here. And they used this to try and convince this court, the lower court, that this was an in-rim action. And the reason's clear. If this was not a quasi-in-rim action, but instead only an in-rim action, they win. Because there is not a personal service requirement. So, therefore, this judgment would only be voidable, and not void. But it is void, because personal service is required. The city argues the focus of the court in determining whether an action is an in-rim or a quasi-in-rim is the nature of the item sought. But that is not correct. Instead, under these facts, it is simply statutory construction. In the United States currency case, our Illinois Supreme Court cited and relied on 725 ILCS 150-9. That is entitled Judicial In-Rim Procedures. It's a provision of the Drug Forfeiture Act. And in noting that the action was in-rim procedure, they didn't go into the analysis. He encourages you to engage him. You simply look to the statute. And that's all this court must do. Except you're going to look at 15.1 that clearly employs the Illinois Mortgage Foreclosure Act law into the abatement of this lien. Also, the clear guidance from ABN-AMRO also supports this approach. So the court should rely on the ABN case cited by both parties to determine, as it did, that mortgage foreclosure actions are quasi-in-rim proceedings. And the motive procedure statute in the Mortgage Foreclosure Act, in that article, it says it applies to any action filed under the Illinois Mortgage Foreclosure Act. Both of which require personal service on an owner-defendant. There cannot be any other outcome, Your Honors. Judge Bowie, you picked up on the inconsistencies, as did Your Honor, in the pleadings. Some of which clearly seek an in personam judgment. That's further support. That's really what I hit on on the brief. But upon looking at this further, I think that's persuasive. But I think what is determinative is what I just brought before this court. The focus on 15.1 and the incorporation of the Illinois Mortgage Foreclosure Act. Accordingly, because the city's complaint to foreclose its lien on Mr. Burr's residential property is a quasi-in-rim proceedings, personal service was necessary. And the court's lack of personal jurisdiction renders the judgment void as a matter of law. The two-year provision in 1401 does not apply. The bona fide purchaser provisions of 1401 do not apply. And that's largely because as stated in statute and as found by the court, this failure of service appears in the record. It's clear. If you look at the affidavit of my esteemed colleague, there's magical language that 206 requires to be incorporated in that affidavit. You have to swear that after due diligence, you were unable to serve the defendant. Service was made one time on Mr. Burr, attempted. And as Your Honor pointed out, it was at 411, I think it's South Street, Metropolis. The city already knew that is not where Mr. Burr resided. He lived in Indiana. How do we know that? In the complaint, it recites that Mr. Burr acquired this property back in 2018, in September of 2018. On that deed, which is an attachment to the motion to vacate, it's Exhibit 1, it has the standard language you see on the deed. Mail all subsequent tax notices to Mr. James Burr in Indianapolis. And it gave his address. Your Honor, I'll just quickly address the Blatches defense. As both parties agree, that is an abuse of standard. And significant deference, substantial deference, should be given to the lower court. And she did not, you know, she's clear in her order. She looked at the entire record. She looked at the affidavits, and that's plural. And there's three affidavits that were filed in this case. One was from my esteemed colleague's partner, Rick Abel. I'm sorry, there was actually two. And the other one was from Mr. West. And everything that they say needs to be considered, and asking for a remand, she already looked at. In fact, we can assume she assumed those were true. So giving them the benefit of the doubt, where the Blatches defense really fails, is the short period of time. Now, my esteemed colleague misconstrues what the starting date and the end date should be, respectfully. He wants to go from when the motion to vacate was granted. And that was March of 20, I believe. But what you have to look at, the starting point, and one thing I need to point out to you, and it's cited in the brief, is this court's opinion in In Re Estate of Schaffroth, which held that in Blatches, the imposition of Blatches requires an unreasonably delayed assertion of a known right. So the key is not what the West thought. It's not what prejudice they suffered. And your honors, I'm sorry, I see him. All right. Thank you. So the key is, when did he know about it? Now, the only evidence in the record of that is from Mr. Abel's affidavit, which he says in either the late summer or early fall of 2021, he got a call from Mr. Burr, and he said, hey, why are there people out on my property? So we've got that date. And let's assume, giving them the benefit of the doubt, that's July of 2021. That's certainly late summer. Couldn't be much earlier than that. And then the other thing is the ending point. The ending point is not when the West were served. The ending point is, when did he assert his rights? And he did so in May of 2022, when his counsel, belatedly because of work, filed a motion to vacate. We're looking at a 10-month span, your honors, if we go from the evidence in the record. At the earliest, it could maybe be the order of confirmation of sale, and that would increase the time to 14 months when that was done. That was January 20th of 21. So we've got either 10 or 14 months. And although the court did not expound this in her order, I think the reason she rejected the laches defense is the facts did not support it, and the alleged delay was just not sufficient. My esteemed colleague cites three cases for the time limits, but he didn't cover those. But look at them. The first one's from this court, DNR v. Wade. It was 48 years. The court did not apply laches in that period. The second one is Pyle v. Farrell. That was 16 years. The court did apply laches in that case. And the shortest one is the last one they cite, Miller v. Vroomberg. And that was two and two-thirds years, and they did apply laches. So I think what this discrepancy shows, the determination of laches is so fact-intensive that you can have big variations in when it's appropriate to apply it. But the one thing that's clear, it sure isn't 10 or 14 months. It's got to be a lot longer than that. But if the clients are finding that they take the default judgment and be reinstated or restored to the property, if you sit on your hands and watch the West spend $53,000 on the property, why does that not shorten the period, or why does that not work to your detriment? And I guess that's my only question. What happens to the West's money they expended in this? Do they have a cause of action against the city, or where do they get their money back? Or are they just out of luck? Well, and that's another section I was going to address, is the equitable arguments. The equitable principles really don't come into this, but it's still something we all consider. So let's kick it around a little bit. Let's look at the prejudice to, they're saying $53,000. They gave $5,001 for a very nice home in a residential neighborhood of Metropolis. They got a bargain, folks. I don't care if there wasn't a house on it. Everyone knows the value of property. A city lot in Metropolis with water, sewage, cost you more than $5,000. But this was a two-story home. Maybe there was, and my client contests there was any damage to the property, but assume there was, as they say it was. So they incurred damages of $53,000. When you look at the value of the home, it was taken from my client for four mowing liens before he even acquired the property. They took his home for $1,200. His loss in the value of the home plus the fees he's incurred that he's paid me is at least three times what the West lost in this case. And they chose not to protect themselves. They could have. They could have demanded a warranty. They didn't. They got a quick claim deed. They could have also acquired title insurance. They chose the cheap way out. When something's too good to be true, it most likely is. Who gets a house in the middle of Metropolis in a nice residential neighborhood for $5,000? The other thing I just want to address, and I think it goes to this equity, they are deemed to have the knowledge necessary to look at the record. And as Judge Tripp found, it's clear from the record. Again, when you look at that affidavit, it did not comply with 206. The certificate of publication did not comply with 206. Service was invalid. Now, had they chose to go with title insurance, that would have most likely came to their direct attention when the title folks, because they would have went and looked at the docket and what had happened, and it would have been apparent. But I don't think equitable principles can overrule these well-understood theories of law. And the best case to look at, I cite in the conclusion, in that state bank of Lake Zurich versus Still, it's a 1986 Illinois Supreme Court, where they addressed this very argument. I'm sorry, give me that slide again. Okay, that's 113 Ill Second 294, and the quote I'm going to read is from page 317. And in that case, and it's a wrong policy, we recognize fully the importance of assuring that a bona fide purchaser of real estate may rely on the facial validity of judicial proceedings, which form a link in his chain of title. However, a purchaser is not entitled to rely on a judicial proceeding, the record of which evinces a lack of jurisdiction. As such, we find no merit in the intervener's suggestion that our decision will deter a third party from becoming a purchaser at a judicial sale of real estate, as well as impair the marketable value of titles derived from such sale. They've already answered that question. Your Honor, I had more, but my time is definitely done unless you have any questions. I guess when you were talking about the latches, you cited another case, and I didn't know if what you cited was in the brief or not, and I was going to get that cite as well. Is that for the short, for the period of time? Yes. So I don't have that here, but they are cited in the appellate's brief. So that's, I shorthanded it as DNR versus Wade, W-A-I-D-E. Pyle versus Farrell, F-E-R-R-E-L-L. And that was the 16 years. And the shortest one was Miller versus Bloomberg. It was the two and two-thirds year length. And I could grab their brief to provide you the cite. I think I've got it in my notes in there. Okay. I just, that one didn't jump out at me. Okay. Do you have any other questions? No questions. Thank you. One clarification, maybe you can tell me how you see the significance of this. I don't have exactly the dates in front of me. My recollection is that the city had filed liens against the property a month or two before the property was conveyed to Mr. Burr. Is that your recollection? So there were four liens that were filed. And under the abatement statutes, there's two things you look at, the date the work was completed and the date on which they were recorded. So the four liens, the work was conducted all before Mr. Burr acquired the property in September of 2018. All of this is from the predecessor. It wasn't mowing the yard. It's not from Mr. Burr. But the last lien was recorded in October of 2018. So I don't think it matters for the appeal, but that means it would not be a legitimate lien and could not be asserted against Mr. Burr. Because you can only pursue abatement liens that are performed and recorded prior to the date of acquisition of the defendant. Okay. Thank you. Thank you. Thank you. Thank you.  And I will say, Mr. Cooper, I know we let Mr. Keller go a little longer in his argument. So if you need a little more time for rebuttal, I'll gladly give you that. I took seriously the time on this. I would have said more, planned for the same when I say that. I don't have the complaint in front of me, but my recollection is that the complaint referenced Do you need a copy of the complaint? Yeah. I have it. That way you can refer to it. Yes, Judge. What I was trying to say was that I referred to multiple sections of the Illinois Municipal Code. And there's nothing nefarious or anything like this. The reason why we proceeded and why we've quoted 11-2015 is that deals with the foreclosure of the lien. And that's the clearest of all of those. It starts with a municipality incurs removal costs under sections, and those are the sections that are in our complaint. So I think we were on solid ground there. A lot of different points were made here that I'd like to clarify. One thing is this whole argument about the West getting a windfall. This house was largely destroyed by fire. The garage was missing. The West didn't get a, you know, I think I'm trying to read in that they got some bargain in a wonderful neighborhood. I know I'm from the tropics, but that's not a wonderful neighborhood down there in the East End. But I'm going outside the record, and I think my opponent has also gone out the record. There's nothing here to imply unclean hands. I think it's what they're trying to imply against the West because they bought a piece of property for $5,000 and put $48,000 into it and got a house. But I don't think they got a windfall, and I don't think if you're trying to apply that, that somehow they would be guilty of unclean hands. I think you're going totally outside the record in this case. There's nothing in those facts. You know, maybe the West just wanted to improve the neighborhood. I don't know what their motive was. There was a, I think the motion to default, or excuse me, the order to default is the key date here, and I'm just going off of what Mr. Brewer played. He's setting aside a default order, and you would go by the date of the default order, and that would put him two years and two months. I'm just going off of his pleadings. I think there's also a lack of recommendation. If you look at 2-1401, and I think it's Section E, you have exceptions. You're getting into this void and voidable. Is the judgment void or is it voidable? If it's void, Mr. Brewer is arguing there's basically no time limit. You can do it at any time. But if it's voidable, you have to do it within two years. But there's an exception to that void rule, and that is that it does not affect the title, the right title of interest in any or to any real or personal property of any person, not according to the original action, which the West were not, acquired for value after the entry of the order of judgment, but before the filing of the petition, and that fits the West exactly, and it's for value. And the West did – value is very clear here – that they did have value in this property. But what do you say to his assertion that his client was only – there's only one attempted service, and that was at the address of this property, which you say is in run-down condition? Yes. He says the deed where Mr. Brewer acquired the property had a notation at the bottom that says send all tax bills to such-and-such address in Indianapolis. Wouldn't that require due diligence on the city's part to send it to the address he put on his deed? Well, I think the statute said he sent it to the last person to pay taxes, and he's using the deed. And, you know, we try to do service because we'd rather, as a city of Metropolis, we'd rather have the money and not have to go through the foreclosure. I mean, we do that hoping that they will come forward. That's our reason for doing service on these. I don't think it's a statutory requirement. But if you've got a property that's recently changed hands, the burrs, you filed a few liens before the property was transferred by deed, and then it transfers. If you send it to the last known address of who paid taxes, you're sending it to the person who's already sold the property and has no interest in it. If I sold the property, I get a notice from the city of Metropolis. I'm thinking, so what? It's not my property anymore. I'm trash canning that. So why is that not the case here? Why should you not send it to the person who has the current deed of ownership? I'm probably going outside the record here. I did make an attempt to locate Mr. Burr, and I was told that he was not in Indiana. But that's not in the record, Judge, but that was the reasoning. All right. Thank you. I would like to make clear on this one point. I think it's a reference to— You may have already stated this, but what is our standard of review here? Is it de novo or is it abuse of discretion on Judge Tripp's part, or how are we to weigh this case? Well, you've got different issues, Judge, and the jurisdictional question is de novo. Judgment of the plea is de novo. Application of latches, which is involved, would be abuse of discretion. I think everything else other than that is de novo. Thank you. The judge's ruling said the affirming defense of the latches has already been rejected, and plaintiff's motion to dismiss. So I think the characterization is she reviewed the affidavits that were filed— I believe that were filed after that because the West weren't even in the case yet. And so I don't think she fully considered the position that the West had with regard to latches, and this would be different from the city, and their payment for value. So I think those are issues that should not have been awarded with a judgment on the pleadings. My opponent talked very quickly, and I couldn't get all his points down, but if there's any questions that the court has, I would be glad to address those. Kind of what comes to what Mr. Taylor, one of his last arguments, and I think it was based on what Justice Vaughn asked, I mean, are we really to even take into consideration what effect, if any, a ruling that we might make would have an effect in equity? I mean, depending on how this court, you know, rules, then it would be up to the West to try to figure out what are our next set of recourse? What can we do? I mean, that's really, I mean, I'm thinking to myself, I don't know if that's really relevant to our decisions today on the issues before us, other than maybe the latches. I mean, that seems like it's a different issue. Yeah, and the purchase for value. I think I understand your question, and I think it's for another day, and I'm here representing both the city and the West. Depending on your, I would advise separate counsel very quickly.  I'm not really in a position to say that. Well, I guess my question was, does the amount the West expended, now they've got $53,000, does that weigh into it at all, as Justice Bowie said, or does it weigh into it and calculate whether or not there has been an argument of latches? I think it weighs into latches, but I also think it determines whether this judgment is void or voyable with that characterization that's made in paragraph E of 2-1401. Any other questions? Yes, sir. No, sir, thank you. I would say this. People always ask me, do our arguments mean anything, or do you just decide it on the briefs? A lot of our decision comes from the briefs, but I think the oral arguments today were really helpful, both sides on how much appellate work you do. Justice Bowie knows you. I don't know if I knew you before today, but I'm very impressed with the arguments you made, both sides, and knowledge of the facts and the cases you cited. I appreciate the arguments today more so today than usually. Thank you. Thank you, Judge. Thank you. Thank you. So, obviously, we will take the matter under advisement. We will issue an order in due course.